IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

DARRYL DAVIS SEMINARS, INC.,
a New York corporation,

    Plaintiff,

v.

RESIDENTIAL WARRANTY SERVICES,
INC., an Indiana corporation, and NATHAN
THORNBERRY, individually

    Defendant.
_____/

## VERIFIED COMPLAINT

Plaintiff, Darryl Davis Seminars, Inc. ("DDS" or "Plaintiff"), by and through its undersigned counsel, hereby sues Defendant, Residential Warranty Services, Inc. ("Residential"), and Nathan Thornberry, individually ("N. Thornberry") (collectively defendants Residential and N. Thornberry are referred to as "Defendants") and states:

### NATURE OF ACTION

1. This is an action in law and equity for trademark counterfeiting, trademark infringement, common law trademark infringement, false designation of origin, trademark dilution, unfair competition, and other claims, in violation of Section 42 of the Lanham Act of 1946, as amended, 15 U.S.C. § 1051, *et seq*., and Florida State law, in additional to other claims. Plaintiff seeks preliminary and permanent injunctive relief and damages due to Defendants' infringement of Plaintiff's federally-registered "POWER AGENT" trademark, Defendants' acts of unfair competition, and Defendants' acts of cybersquatting, among other claims. Without authorization, Defendants are using the "POWER AGENT" mark in connection with identical

services that are marketed through the same channels of trade to the same consumers. As a result, Defendants' actions are causing immediate and irreparable harm.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), 28 U.S.C. § 1338(b) (pendant unfair competition claims) and 28 U.S.C. § 1367 (supplemental jurisdiction).

3. This Court has personal jurisdiction over the Defendants pursuant to Fla. Stat. §48.193 because Defendants are operating, conducting, engaging in, and carrying on a business in the State of Florida and this judicial district and is committing tortious acts within the State of Florida and this judicial district.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the services that are the subject of this action were, and continue to be rendered, within this judicial district, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE PARTIES

5. Plaintiff, DDS, is a corporation organized and existing under the laws of the State of New York, having its principal place of business in Wading River, New York.

6. Defendant, Residential, is a corporation organized and existing under the laws of the State of Indiana, having its principal place of business in Carmel, Indiana, and an address of 698 Pro Med Ln., Carmel, IN 46082, and is registered to transact business and does transact business in the State of Florida.  Defendants' registered agent for service of process in Florida is Incorp Services, Inc., 17888 67th Court, North Loxahatchee, Fl 33470

7.     Defendant, N. Thornberry, is an individual believed to reside at 698 Pro Med Ln, Carmel, IN, 46032, USA.  At all times relevant hereto Mr. Thornberry was president of Defendant Residential and maintained operational control of the company and its actions.

## FACTS IN COMMON TO ALL COUNTS

A.  **Plaintiff's Trademark and Related Services**

8.     Plaintiff DDS conducts extensive marketing, coaching and sales seminars, training events and workshops throughout the United States specifically directed to real estate agents, brokers and managers. Through Plaintiff's services, real estate agents are provided the tools and guidance to achieve professional success in the real estate profession.

9.     Plaintiff has used the POWER AGENT mark (the "Mark") in connection with its services since at least as early as 1993, and has developed a strong reputation in the marketplace for rendering high quality services under the Mark.

10.    Plaintiff's services rendered under the Mark have been the subject of significant unsolicited media attention, including, but not limited to, recognition by the Real Estate Unplugged series, Leading Real Estate Companies of the World Institute Training, RisMedia Publications, Resilience Radio, and Milieu magazine. The mark has also been promoted the nationally bestselling book published in 2002 by McGraw-Hill Publishers entitled "How to Become a POWER AGENT in Real Estate."

11.    The Mark has garnered significant goodwill and has become a valuable commercial asset during more than two decades of exclusive and continued use by Plaintiff.

12.    Plaintiff registered the Mark with the United States Patent and Trademark Office ("USPTO") in 1999 and obtained U.S. Reg. No. 2,247,697 for the Mark for use on and in connection with Class 41 "educational services, namely, conducting real estate agent training

seminars." The Mark became incontestable in 2005 and was renewed in 2009. A true and correct copy of Plaintiff's registration for the Mark is attached hereto as *Exhibit A*.

13. Plaintiff's trademark registration is valid and subsisting.

14. Plaintiff vigorously polices and enforces the Mark, and has successfully stopped numerous infringers from using the mark in connection with related services.

15. Over the years, Plaintiff has used the Mark and expended substantial sums in advertising and in the promotion of its services under the Mark. Such advertising has included Internet and print advertising.

16. Plaintiff owns and operates numerous domains including POWER AGENT domains including: <poweragentconference.com>, <poweragent.net>, <poweragent.org>, <poweragentcentral.com>, <poweragentcoaching.com>, <poweragentconvention.com>, <poweragentnetwork.com>, and more than a dozen others. In particular, Plaintiff owns and operates a website located at the domain <poweragentconference.com> that promotes the POWER AGENT real estate training seminars. The website prominently displays the Mark and markets and promotes the services rendered under the mark.

17. Each year, Plaintiff holds over forty (40) POWER AGENT seminars throughout the United States. Plaintiff markets and promotes the POWER AGENT seminars on a website located at <poweragentseminar.com>.

18. Over the course of the past two decades, Plaintiff has held hundreds of seminars throughout the entire United States, at least fifty-five POWER AGENT events throughout the State of Florida, and garnered over nine-thousand attendees throughout the State of Florida.

19. Plaintiff has carefully cultivated the Mark, ensuring that the seminars are conducted at the highest standards of quality and professionalism.

20. The Mark has become famous as a result of its distinctiveness; the duration and extent of its use in interstate commerce since 1993; the duration and extent of the advertising and publicity that utilized it; the geographical extent of the trading area in which it is used; the channels of trade for the services; the degree of recognition of the Mark in the trading areas and channels of trade in which it is used; the insubstantial — if not non-existent — nature and extent of the use of marks similar to the Mark in connection with goods and services offered by third parties; and the registration of the Mark for goods on the Principal Register.

21. As a result of this long and continuous use, the Mark has come to identify Plaintiff's POWER AGENT seminars and to distinguish them from those of others in the field, and has come to represent and symbolize to the purchaser that the seminars conducted under the Mark are operated to standards of the highest quality. As a result, Plaintiff has established substantial goodwill in the Mark, which is now a valuable asset.

22. The goodwill that Plaintiff possesses among the consuming public would be undermined if Defendants are not prohibited from operating seminars and advertising Residential's services bearing counterfeit copies of the Mark and thereby creating a likelihood that the public would be confused about the origin of their services.

B. **Defendants' Infringing Conduct**

23. In early August of this of this year, DDS discovered that Defendants were offering, arranging and conducting business seminars in the field of real estate using a counterfeit POWER AGENT CONFERENCE mark (the "Counterfeit Mark").

24. The services where being offered to the identical consumers served by DDS using the famous POWER AGENT mark.

25. DDS further discovered that Defendants registered the domain <poweragentconference.net> ("Infringing Domain Name") which copies DDS' domain <poweragentconference.com>.

26. Defendants operate a website at this domain which prominently displays the Counterfeit Mark in connection with Defendants' unauthorized services ("Infringing Website"). True and correct printouts from Infringing Website and social media are attached hereto as *Exhibit B*.

27. On August 10, 2017, at approximately 1:00 p.m., Darryl Davis, owner of Plaintiff corporation, called Nathan Thornberry. Mr. Davis told Mr. Thornberry that his use of the POWER AGENT mark was an infringement. Mr. Thornberry hung up the phone.

28. Unbeknownst to Mr. Davis, later the same day N. Thornberry filed a federal trademark application (app. No. 87563822) on behalf of Residential to register the mark POWER AGENT CONFERENCE. ("Infringing Trademark Application") *See Exhibit C - TEAS page.*

29. The trademark examiner issued an office action refusing registration because of the DDS registration. *See Exhibit D – office action.* In particular, the USPTO referenced the similarity of the marks and the relatedness of the services between the two marks in justifying the application's rejection.

30. On October 4, 2017, counsel for DDS sent N. Thornberry a letter via certified mail asking him and Residential to cease and desist in their infringing conduct. *Exhibit E.* A copy of the letter was e-mailed to Defendants October 10, 2017. Defendants ignored this letter.

31. Last month DDS learned that Defendants were continuing to use the Counterfeit Mark by operating the Infringing Website. Furthermore, Defendants have offered a new POWER AGENT CONFERENCE in Florida.

32. This new infringing event is advertised on the Infringing Website as a WEST PALM BEACH EVENT scheduled to take place on Thursday, January 25, 2018 at the Realtor's Association of the Palm Beaches, 1 Harvard Cir., West Palm Beach, FL 33409.

33. Realtor associations are the specific types of customers and channels of trade targeted by DDS using its famous POWER AGENT mark.

34. According to the Infringing Website, Defendants have held at least four infringing POWER AGENT CONFERENCE events in Florida, including events in Orlando, Largo, and Sarasota.

35. Defendants are knowingly, willfully and without authorization, rendering, offering, advertising, marketing and/or promoting services under the Counterfeit Mark.

36. In addition to DDS' well known status in the industry, Defendants had constructive notice of Plaintiff's mark through its long-standing trademark registration.

37. The Counterfeit Mark is identical in sight, sound, meaning and commercial impression to the Mark because it merely adds a descriptive term (i.e., the word "CONFERENCE") to Plaintiff's incontestable mark.

38. The services Defendants render under the Counterfeit Mark are identical to Plaintiff's services. In particular, the Defendants use the Counterfeit Mark in connection with arranging and conducting business seminars in the field of real estate.

39. Defendants are marketing and promoting their services to the same consumers as targeted by Plaintiff, namely, real estate agents who want to increase their performance in the marketplace, including those residing within this judicial district.

40. Defendants began using the Counterfeit Mark over 22 years after Plaintiff started using its Mark in connection with identical services and after Plaintiff established POWER AGENT as a famous brand name and single-source identifier.

41. Defendants' Counterfeit Mark is confusingly similar in sight, sound, meaning and commercial impression to Plaintiff's Mark.

42. Because the Counterfeit Mark is confusingly similar to Plaintiff's Mark and is used in connection with closely related services, consumers are likely to be deceived and/or confused into believing that Defendants' services are Plaintiff's services, when, in fact, they are not. At the very least, consumers are likely to believe that Defendants' services are sponsored by, associated with or affiliated with Plaintiff's services.

43. Upon information and belief, Defendants have willfully and intentionally violated Plaintiff's trademark with the deliberate intention of trading on the valuable goodwill and reputation established in the Mark.

44. Defendants' use of Plaintiff's Mark has caused confusion and is likely to cause confusion, mistake or deception as to the source of origin of Defendants' services in that the public, the trade, and others are likely to believe that Defendants' services are provided by, sponsored by, approved by, licensed by, affiliated with or in some way legitimately connected to Plaintiff, all to Plaintiff's irreparable harm.

45. Plaintiff has never authorized and does not now authorize Defendants' infringing use of the Counterfeit Mark or the infringing domain.

46. Plaintiff has no control over the nature, quality or pricing of Defendants' services or any other aspect of their business conduct. Any failure, neglect or default by Defendants in providing Defendants' services labeled with unauthorized facsimiles of the Plaintiff's Mark will

reflect adversely on Plaintiff as the believed source of origin thereof, thus hampering efforts by Plaintiff to continue to protect their outstanding reputations for its services, resulting in loss of sales and thwarting Plaintiff's considerable efforts and expenditures to promote their genuine products under its trademarks.

47. Defendants' use of the Mark is likely to cause dilution of the distinctive quality of the trademark and to tarnish it.

48. Unless restrained by this Court, Defendants will continue to willfully and intentionally offer to sell and sell services bearing counterfeits of Plaintiff's Mark, causing Plaintiff irreparable harm which may not be cured or compensated by money damages.

49. All conditions precedent to the filing of this action have either been met or have been waived by the parties.

## COUNT I

### DIRECT AND CONTRIBUTORY INFRINGEMENT AND COUNTERFEITING OF FEDERALLY REGISTERED TRADEMARKS
**(Against all Defendants)**

50. Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 49.

51. This is a claim by Plaintiff for direct and contributory infringement and counterfeiting of federally registered trademarks arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

52. Defendants' activities, as alleged, constitute direct and/or contributory infringement and counterfeiting of Plaintiff's federally registered POWER AGENT trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, all to the substantial and irreparable injury of the public and of Plaintiff's business reputation and goodwill.

53. By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with its registered Mark, including diversion of customers from them, lost sales and lost profits, and Defendants will stand to be unjustly enriched.

54. Defendants' acts are willful, intentional and egregious and make this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT II

### TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN
(Against all Defendants)

55. Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 49.

56. This is a claim by Plaintiff for trademark infringement and false designation of origin arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57. Defendants' activities, as alleged, constitute infringement and/or contributory infringement of Plaintiff's trademark, false designation of origin, false representation and false description, all to the substantial and irreparable injury of the public and of Plaintiff's business reputations and goodwill.

58. By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with the Plaintiff's trademarks, including diversion of customers from Plaintiff, lost sales and lost profits, and Defendants will be unjustly enriched. Plaintiff has no adequate remedy at law.

59. Defendants' acts are willful, intentional and egregious and make this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT III

### TRADEMARK DILUTION, 15 U.S.C. § 1125(C)
**(Against all Defendants)**

60. Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 49.

61. This is a claim by Plaintiff for trademark dilution in violation of 15 U.S.C. § 1125(C).

62. The actions of Defendants as described above have diluted the reputation and value of Plaintiff's famous trademark through its false and misleading advertising and counterfeiting of the Mark.

63. Defendants, in connection with promotion and advertising of its services and conduct of business, has used in interstate commerce the words, terms, names, symbols or any combinations thereof related to Plaintiff's famous Mark, such use beginning after the Mark became famous.

64. Defendants' conduct was willfully intended to tarnish the reputation and value of Plaintiff's famous Mark and to dilute the Mark by blurring its distinctiveness.

65. Defendants' violations of the Lanham Act have damaged Plaintiff and will continue to damage Plaintiff unless enjoined by the Court.

66. Plaintiff has suffered monetary damages as a result of Defendants' unlawful acts in an amount to be determined at trial.

67. Defendants' acts of unfair competition, passing off, false designation of origin and deception are willful, intentional and egregious and make this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT IV

### FEDERAL ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT VIOLATION (15 U.S.C. § 1125(d))
### (Against all Defendants)

68. Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 49.

69. Plaintiff repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

70. Plaintiff owns all rights, title and interest in and to the Mark.

71. Defendants are the registrants of a domain that is confusingly similar to Plaintiff's distinctive and famous mark. Namely, <poweragentconference.net> ("Infringing Domain Name").

72. Upon information and belief, Defendants registered the Infringing Website with the bad faith intent to profit as evidenced by, inter alia: (i) Defendants registered and used the Infringing Domain Name to divert consumers from Plaintiff's web site to web sites accessible under the Infringing Domain Name for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the web site; (ii) its use of POWER AGENT in the domain in willful disregard of Plaintiff's rights; (iii) the Infringing Domain Name consists of a name that is associated with Plaintiff; (iv) Defendants are using the Infringing Domain Name to perpetuate willful trademark infringement; and (v) Defendants' infringing activities are commercial.

73. Upon information and belief, Defendants committed these acts alleged herein willfully and with the intent to confuse the public and to injure Plaintiff.

74. Defendants' acts have caused and are causing great and irreparable harm and damage to Plaintiff, and unless permanently restrained and enjoined by this Court such irreparable harm will continue.

75. As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered and continues to suffer and/or is likely to suffer damage to its trademark, business reputation and goodwill.

76. Defendants' registration and use of the Infringing Domain Name is intended primarily to capitalize on the good will associated with Plaintiff's mark.

77. Defendants' diversion of traffic from Plaintiff's web site has harmed and continues to harm Plaintiff's ability to generate business and keep members.

78. Defendants' registration and use of the Infringing Domain Name causes Plaintiff's customers and potential customers to believe that Plaintiff's web site is no longer available or that Plaintiff allows advertisements for potentially inappropriate goods or services.

79. Defendants' registration and use of the Infringing Domain Name has caused and will continue to cause damage to Plaintiff, in an amount to be proven at trial, and is causing irreparable harm to Plaintiff, for which there is no adequate remedy at law.

## COUNT V

### DIRECT AND CONTRIBUTORY INFRINGEMENT AND COUNTERFEITING OF COMMON LAW TRADEMARK
(Against all Defendants)

80. Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 49.

81. This is a claim by Plaintiff for direct and contributory infringement and counterfeiting of Plaintiff's common law trademark.

82. Defendants' activities, as alleged, constitute direct and/or contributory infringement and counterfeiting of Plaintiff's trademarks in violation of Plaintiff's common law trademark rights, all to the substantial and irreparable injury of the public and of Plaintiff's business reputation and goodwill.

83. By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with their registered marks, including diversion of customers from them, lost sales and lost profits, and Defendants will stand to be unjustly enriched. Plaintiff has no adequate remedy at law.

## COUNT VI

### COMMON LAW UNFAIR COMPETITION
### (Against all Defendants)

84. Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 49.

85. This is a claim for unfair competition arising under the common law of the State of Florida.

86. By their foregoing deceptive and/or fraudulent conduct creating a likelihood of confusion, Defendants have unfairly competed with Plaintiff and/or contributed to acts of unfair competition by other third parties, all to the substantial and irreparable injury of the public and of Plaintiff's business reputations and goodwill.

87. By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with the Plaintiff's trademarks, including diversion of customers from Plaintiff's lost sales and lost profits, and Defendants will be unjustly enriched. Plaintiff has no adequate remedy at law.

### COUNT VII

**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
FLORIDA STATUTES SECTIONS 501.201 *ET SEQ.*
(Against all Defendants)**

88. Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 49.

89. This is an action for damages pursuant to Florida's Deceptive and Unfair Trade Practices Act, Florida Statute § 501.20 et. seq. ("FDUTPA").

90. Section 501.204 of FDUTPA prohibits "unfair methods of competition, unconscionable acts of practices and unfair or deceptive acts or practices in a conduct of any trade or commerce." Specifically, Defendants have engaged in the intentional infringement of Plaintiff's POWER AGENT trademark, has mislead the public, and has fostered confusion in the marketplace.

91. As a direct and proximate result of the activities and conduct in violation of Florida's Deceptive and Unfair Trade Practices Act, Plaintiff is an aggrieved person as defined by said statute and has suffered damages within the meaning of said statute.

92. Plaintiff seeks to recover its actual damages against Defendants as well as reasonable attorney's fees and court costs under Florida Statutes § 501.211 and § 501.2105.

**WHEREFORE,** Plaintiff prays:

(1)     That a preliminary and permanent injunction issue, pursuant to Section 42 of the Lanham Act, 15 U.S.C. §§ 1124 and 1125, and the equitable power of this Court to enforce the common law of the state of Florida, restraining Defendants, their agents, servants, partners, representatives, employees, successors and assigns, and all others in concert and privity with them from:

(a)     Directly or indirectly making any use related to educational services, namely, conducting real estate agent training seminars, and/or causing, aiding, abetting or contributing to the actions of others in using in relation to educational services, namely, conducting real estate agent training seminars:

   i.    Any trademark which includes the words POWER or AGENT, or which is otherwise confusingly similar to Plaintiff's Mark and its associated designs and trade dress; and

   ii.   Any advertisements or promotional materials or other items that are labeled with or contain trademarks designs or trade dress prohibited in i. above; and

(b)     Directly or indirectly infringing Plaintiff's trademarks and/or trade dress;

(c)     Directly or indirectly seeking to register trademarks and/or trade dress which are confusingly similar to Plaintiff's trademarks or trade dress; and

(d)     Unfairly competing with Plaintiff; and

(e)     Falsely claiming any affiliation with Plaintiff; and

(f)     Registering, using, or trafficking in any domain names that are identical or confusingly similar to Plaintiff's POWER AGENT mark, including but not limited

to domain names containing Plaintiff's mark and domain names containing misspellings of Plaintiff's mark.

(2) That the Court enter judgment for Plaintiff and against Defendants on all counts finding that, amongst other things that:

(a) Defendants have infringed Plaintiff's registered trademark in violation of 15 U.S.C. § 1114;

(b) Plaintiff's trademark is famous, and Defendants' actions constitute dilution of said mark pursuant to 15 15 U.S.C. § 1125(c);

(c) Defendants' conduct has violated the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d);

(d) Defendants' actions constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a) and Florida state law;

(e) Defendants' actions constitute common law infringement of Plaintiff's trademark;

(d) Defendants' actions constitute a violation of the Florida's Deceptive and Unfair Trade Practices Act, Florida Statute § 501.20 et. seq.

(3) That the Court order the transfer to Plaintiff of the Infringing Trademark Application, the Infringing Domain Name and any other domain names registered to and/or used by Defendants that are confusingly similar to or include the Plaintiff's POWER AGENT mark, including but not limited to domain names containing Plaintiff's mark and domain names containing misspellings of Plaintiff's mark.

(4) That Defendants be required to account to Plaintiff for Defendants' profits and the actual damages suffered by Plaintiff as a result of Defendants' acts of infringement, false

designation of origin, and unfair competition together with interest, that Plaintiff's recoveries be enhanced and/or trebled, and that prejudgment interest be awarded, pursuant to Section 43 of the Lanham Act, 15 U.S.C. §§ 1117 and 1125, and the common law of the State of Florida.

(5) That Defendants be required to pay statutory damages to Plaintiff pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

(6) That Defendants be ordered to surrender for destruction all products, order forms, price lists, labels, advertisements, brochures, catalogs, packaging materials and other materials incorporating or imitating Plaintiff's trademarks and/or trade dress, pursuant to Sections 36 and 43 of the Lanham Act, 15. U.S.C. §§ 1118 and 1125, and the equitable power of this Court to enforce the common law of the State of Florida.

(7) That Defendants be required to recall from distribution and surrender for destruction all products, order forms, price lists, labels, advertisements, brochures, catalogs, packaging materials and other materials incorporating or imitating Plaintiff's trademarks, and/or trade dress, pursuant to Sections 36 and 43 of the Lanham Act, 15. U.S.C. §§ 1118 and 1125, and the equitable power of this Court to enforce the common law of the State of Florida.

(8) That Defendants be required to pay for corrective advertising.

(9) That Defendants be required to pay Plaintiff's attorneys' fees, together with costs of this suit, pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1117).

(10) For such other and further relief as may be just and equitable.

//
//
//

Dated: December 13, 2017.                Respectfully submitted,

                                               **ESPINOSA MARTINEZ PL**

By:   /s/Jorge Espinosa
      Jorge Espinosa, Esq.
      Florida Bar No. 779032
      Jespinosa@etlaw.com
      Richard Bec
      Florida Bar. No. 662585
      rbec@etlaw.com
      1428 Brickell Avenue
      Suite 100
      Miami, FL 33131
      Tel:  305-854-0900
      Fax: 855-854-0900
      *Counsel for Plaintiff*

## **VERIFICATION**

I DECLARE UNDER PENALTY OF PERJURY, pursuant to Florida Statutes 92.525 and 28 U.S.C. § 1746, that the foregoing is true and correct.

Darryl Davis, President
DARRYL DAVIS SEMINARS, INC